# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

SECURITIES AND EXCHANGE
COMMISSION,

     Plaintiff

v.

JOHN THOMAS, et al.,

     Defendants

Case No.: 2:19-cv-01515-APG-VCF

**Order (1) Denying Motion to Dissolve or
Modify Preliminary Injunction,
(2) Denying Motion to Strike, (3) Granting
Limited Intervention, and (4) Granting in
Part Application for Reasonable Living
Expenses**

[ECF Nos. 47, 55, 64, 72]

     The Securities and Exchange Commission (SEC) alleges that defendants John Thomas and Thomas Becker, through various entities, operated a sports-betting investment scheme that violated federal securities laws.  I granted the SEC's motion for a preliminary injunction enjoining Thomas, Becker, and the entities from committing future violations and freezing their assets. ECF Nos. 45, 46.  Thomas and Becker now move to remove non-party No-More-Bad-Hires Inc. (NMBH) from the scope of the injunction and lift the freeze of their personal assets. ECF No. 47.  Thomas and Becker alternatively move for clarification of the factual findings supporting the preliminary injunction. *Id.* at 9.  Because the SEC has shown that the defendants transferred investor money through NMBH and a freeze of Thomas and Becker's personal assets is appropriate, I deny the motion.

     Thomas and Becker also apply for reasonable living expenses and legal fees, as provided by section VIII of the preliminary injunction. ECF No. 55.  The SEC objects both substantively and because Thomas and Becker failed to confer with it prior to filing the application, but it stipulates to a $5,000 allowance per month per defendant. ECF No. 57.  Because Thomas and Becker fail to provide declarations substantiating their request for living expenses, I grant in part

their motion by allowing them each $5,000 per month, without prejudice to filing another application with better support.

Finally, several of the defendants' creditors move to intervene to object to the use of the frozen funds to support the defendants' living expenses and legal fees.  I grant their motion to intervene on that limited basis.

## I.  Motion to Dissolve or Modify the Preliminary Injunction (ECF No. 47)

A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction. *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quotation and emphasis omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (citing Fed. R. Civ. P. 54(b)).  Thomas and Becker argue that sufficiency is thus the only relevant standard.  But the Ninth Circuit has also held that "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A district court also may reconsider its decision if "other, highly unusual, circumstances" warrant it. *Id.*  "A motion for reconsideration is not an avenue to re-litigate the same issues and arguments upon which the court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004).  And a motion for reconsideration may not be based on arguments or evidence that could have been raised previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

Thomas and Becker could have raised their arguments previously.  The NMBH bank account was included in the SEC's proposed preliminary injunction. ECF No. 6-1 at 7.  And the

parties extensively litigated whether a freeze of Thomas and Becker's assets was justified on these facts. ECF Nos. 6 at 28-30, 13 at 16-21, 21 at 15-16.  But Thomas and Becker focused their opposition to the preliminary injunction on a legal argument that the scheme at issue was not subject to federal securities laws.  They stipulated to the SEC's statement of facts, "accept[ing] as true, for purposes of [the motion for a preliminary of injunction] only, the Statement of Facts set forth in [the SEC's] Motion." ECF No. 13 at 5 n.3.  Having lost their legal argument, Thomas and Becker now return to contest the facts supporting two elements of the preliminary injunction. That is procedurally improper.  In any event, their arguments fail on their merits.

**A. NMBH**

Thomas and Becker argue NMBH is not tied to any of the bad acts alleged by the SEC. ECF No. 47 at 4.  The SEC responds that NMBH received at least $2,745,325 from entities controlled by Thomas and Becker without any evident business purpose, resulting in the commingling of assets. ECF No. 52 at 5-7.  Thomas and Becker reply that the SEC's evidence of the transfers is hearsay and violates the best evidence rule. ECF No. 56 at 5.

"Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013).  "A district court may . . . consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988) (en banc)).

In her declaration, SEC staff accountant Deborah Russell notes that Thomas is the sole authorized signatory on NMBH's bank accounts. ECF No. 7 at ¶¶ 4, 17.  Russell concluded that there were "numerous inter-bank transactions that transferred funds between the various entities

[including NMBH] with no apparent business purpose." *Id.* at ¶ 29.  In response to the present motion, Russell submitted a supplemental declaration elaborating that other defendants in this action transferred $2,745,325 to NMBH and attached a spreadsheet of the relevant transfers. ECF No. 54.  Thomas and Becker do not respond with a business purpose for the transfers or a business purpose for the NMBH entity.  Rather, they respond with evidentiary objections.  I overrule those objections because the rules of evidence do not apply strictly to preliminary injunction proceedings and I find Russell's analysis persuasive.  Because the SEC has shown that the defendants and NMBH commingled funds, I deny Thomas and Becker's motion to dissolve the freeze of NMBH's account.

**B.  Thomas and Becker**

Thomas and Becker argue that the SEC has not shown a likelihood of dissipation of assets, as required by the Ninth Circuit. ECF No. 47 at 8.  The SEC responds that it has provided evidence that Thomas and Becker improperly dissipated investor money, including spending over $1 million on retail purchases, wellness products, food, and travel. ECF No. 52 at 7-9.

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson,* 572 F.3d at 1085.  In *Johnson*, an executive "convinced his fellow directors and trustees to consent to divert[] nearly $35 million from [a corporate employee stock ownership plan] into his personal bank account." *Id.*  The Ninth Circuit held it was not an abuse of discretion to freeze the executive's assets because "[s]uch an individual is presumably more than capable of placing assets in his personal possession beyond the reach of a judgment." *Id.*

Thomas and Becker stipulated for purposes of the preliminary injunction motion that they "have misappropriated at least $13.9 million in investor funds to cover their living expenses and

expenses associated with their businesses," including "$860,000 for retail purchases, wellness products and utilities, and over $256,000 on food and travel . . . ." ECF Nos. 6 at 14, 13 at 5 n.3. The SEC offers the Russell declaration as evidence that investor funds were diverted for personal use. ECF No. 7 at ¶¶ 33, 35, 38-39.

Thomas and Becker do not respond with evidence that these expenses had a business purpose. Rather, they argue that the SEC "has not alleged any effort on the part of Messrs. Thomas and Becker to put any assets outside the reach of their creditors." ECF No. 47 at 8. But *Johnson* instructs that an individual who diverts investor funds to personal use "is presumably more than capable of placing assets in his personal possession beyond the reach of a judgment." 572 F.3d at 1085.[1] The SEC has shown a likelihood of dissipation of assets because Thomas and Becker diverted investor funding to their own personal use. So I deny the motion to modify the preliminary injunction.

**C. Request for Clarification**

Thomas and Becker "ask for some clarification as to the evidence upon which the [preliminary injunction] order is based, if only so as to permit them to timely marshal evidence

---

[1] Thomas and Becker appear to rely on two district court cases suggesting that the SEC must show prior dissipation of assets. *See* ECF Nos. 47 at 8 (citing *S.E.C. v. Schooler*, 902 F. Supp. 2d 1341, 1360 (S.D. Cal. 2012)), *and* 56 at 5 ("Case law is clear that an asset freeze is *not* appropriate where there 'is no evidence that Defendants have ever previously attempted to intentionally dissipate, hide or otherwise shelter corporate or personal assets from an effort to collect a debt or judgment against Defendants.'" (quoting *F.T.C. v. John Beck Amazing Profits*, LLC, 2009 WL 7844076, at *15 (C.D. Cal. 2009)). But both cases are distinguishable. In *John Beck*, "the only evidence in support of an asset freeze [was] Defendants' misleading marketing practices." 2009 WL 7844076 at *15. In *Schooler,* the court rejected the SEC's allegation that the defendants diverted investor funds for "hush money" because it went to an investor with a rightful claim to the funds. 902 F. Supp. 2d at 1361. Here, the SEC showed, and Thomas and Becker stipulated, that investor funds were diverted to Thomas and Becker's personal use. *Johnson* instructs that such past behavior indicates a likelihood of dissipation of assets. 572 F.3d at 1085.

to the contrary and petition for subsequent dissolution" of the preliminary injunction. ECF No. 47 at 9. They stipulated to the SEC's statement of facts and rested their opposition to the preliminary injunction on a legal argument. ECF No. 13 at 5 n.3. In the hearing, the parties and I primarily addressed that legal argument. I did not identify which of the numerous declarations and exhibits submitted by the SEC supported my decision because the facts were not in dispute. Nor will I do so now that Thomas and Becker have decided to contest the facts. I direct Thomas and Becker's attention to the SEC's statement of facts and declarations.

## II.    Motion to Intervene and Motion to Strike

Some of the defendants' creditors filed a letter objecting to the use of any frozen funds to pay for the defendants' living expenses or legal fees. ECF No. 63. The defendants moved to strike that letter. ECF No. 64. The creditors then moved to intervene in this action for the limited purpose of objecting to the defendants' request for living expenses and legal fees. ECF No. 72. The SEC does not oppose intervention so long as it is limited to that issue. ECF No. 79 at 2. I grant the creditors' request to intervene but limit their role solely to the issue of the defendants' request to unfreeze funds for living expenses and legal fees. I deny the defendants' motion to strike as moot.

## III.    Application for Reasonable Living Expenses and Attorney's Fees

Thomas and Becker move for "monthly allowances of $12,345 and $7,246, respectively, for ordinary and customary living expenses, and a $5,000 allowance, per defendant, per month, for legal fees." ECF No. 55 at 3. The SEC objects substantively and because Thomas and Becker failed to meet and confer about this. But the SEC consents to a $5,000 allowance per defendant per month for living expenses. ECF No. 57.

I have discretion to modify an asset freeze to allow payment of reasonable living expenses. *See F.T.C. v. Trek All., Inc.*, 81 F. App'x 118 (9th Cir. 2003).  I also have discretion to deny or limit payment of attorney's fees out of frozen assets. *See FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989).  "A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989).

In *SEC v. Quinn*, the district court required the SEC to make a preliminary showing that the defendant's assets could be traced to fraud before shifting the burden to the defendant to show that he possessed assets untainted by fraud. 997 F.2d 287, 289 (7th Cir. 1993).  Even where frozen assets are insufficient to cover the claims against them, "attorney fee applications [must not] always be denied . . . .  Discretion must be exercised by the district court in light of the fact that wrongdoing is not yet proved when the application for attorney fees is made." *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995).

Thomas and Becker have not established their necessary living expenses.  They do not attach declarations or evidence detailing their necessary expenses and lack of other income.[2] Instead, they attach a lease agreement, account statements, and a hand-written schedule of credit card payments. ECF Nos. 55-1, 55-2, 55-3, 55-4.  Some account statements include hand-written modifications of the amounts owed, emphasizing the need for sworn declarations to support what expenses are truly owed. ECF No. 55-3.  I grant Thomas and Becker's motion in part, allowing

---

[2] Thomas and Becker argue in reply that such declarations could represent waiver of their Fifth Amendment rights.  But waiver is only inferred if the witness' prior statements are both testimonial and "'incriminating,' meaning that they did not merely deal with matters 'collateral' to the events surrounding commission of the crime." *Klein v. Harris*, 667 F.2d 274, 288 (2d Cir. 1981).

them each the $5,000 per month stipulated by the SEC, without prejudice to a renewed motion for living expenses.  Payment of these monthly amounts shall be retroactive to January 1, 2020.  If Thomas and Becker decide to file a renewed motion for living expenses or legal fees, they first must confer with the SEC to attempt to reach an agreement on such issues.

The SEC shall confer with the defendants about which frozen accounts should be used to pay the monthly living expenses.  Because defendant Wellscorp, Inc. has filed for bankruptcy protection (*See* ECF No. 68), its accounts shall not be used at this time.  The parties shall submit a stipulation regarding the protocol for payment of the living expenses.  If the parties cannot agree on which accounts to use or how to make the payments, they shall submit competing proposals **by July 7, 2020**.

I deny the request for legal fees because counsel for Thomas, Becker, and their related entities have withdrawn and no new counsel has appeared for them. *See* ECF Nos. 83, 84.  Thus, the request is moot.

**IV.  CONCLUSION**

I THEREFORE ORDER that defendants John Thomas and Thomas Becker's motion to dissolve or modify the preliminary injunction **(ECF No. 47) is DENIED.**

I FURTHER ORDER that defendants John Thomas and Thomas Becker's application for reasonable living expenses **(ECF No. 55) is GRANTED in part.**  The preliminary injunction **(ECF No. 46) is MODIFIED** to allow Thomas and Becker each $5,000 per month for living expenses, retroactive to January 1, 2020.  The SEC shall confer with the defendants about which frozen accounts should be used to pay those monthly expenses.  The parties shall submit a stipulation regarding the protocol for payment **by July 7, 2020**.  If the parties cannot agree on which accounts to use or how to do that, they shall submit competing proposals by that date.

1        I FURTHER ORDER that the creditors' motion to intervene **(ECF No. 72) is**

2   **GRANTED** but limited solely to the issue of the defendants' request to unfreeze funds for living

3   expenses and legal fees.

4        I FURTHER ORDER that the defendants' motion to strike **(ECF No. 64) is DENIED AS**

5   **MOOT.**

6        DATED this 11th day of June, 2020.

7

8                                                ANDREW P. GORDON
                                                 UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23